**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **MALCOLM CARPENTER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **No.  20 C 7359** |
| **v.** ) | |
| ) | **Judge Rebecca R. Pallmeyer** |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

In August 2017, a jury convicted Malcolm Carpenter on all counts of a three-count federal indictment for bank robbery and two related offenses for the use of a firearm.  This court later sentenced Carpenter to 30 years in prison, followed by three years of supervised release.  Carpenter now moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  He argues that his court-appointed lawyer's failure to file reply briefs and a supporting affidavit for two pretrial motions constituted ineffective assistance of counsel.  For the reasons explained below, his motion [1] is denied.[1]

## BACKGROUND

### I.    December 2013 Robbery and Arrest

The facts underlying Carpenter's criminal proceeding are set forth in *United States v. Carpenter*, No. 13 CR 930-1, 2017 WL 11428882 (N.D. Ill. July 19, 2017) (denying motion to quash arrest), and *United States v. Carpenter*, 803 F. App'x 959 (7th Cir. 2020) (affirming conviction and sentence on direct appeal).  To recap: on December 4, 2013, two men entered a Bank of America branch in Homewood, Illinois, brandished handguns, and forced employees to empty cash into a tote bag before the two men fled the scene.  *Carpenter*, 2017 WL 11428882,

---

[1]    Citations to Carpenter's criminal docket (No. 13 CR 930-1) are denoted with an asterisk. All other citations are to Carpenter's civil docket (No. 20 C 7359).

at *1. Law enforcement officers from the Homewood Police Department ("HPD") arrived, interviewed witnesses, and reviewed surveillance footage that showed the two men running toward a nearby apartment building. *Id.* Officers set up a perimeter around that building and a parking lot, and stopped and arrested a man outside—later identified as Antwan Timms—who had a large amount of cash and a car key in his pocket. *Id.*; (Trial Tr. 139:13–24.)[2]

FBI agents, meanwhile, traced GPS transmitters that bank employees had slipped into the bag of cash; the transmitters led to the parking lot outside the apartment building. *Carpenter*, 2017 WL 11428882, at *1. The agents and officers surrounded a gray 1998 Volvo parked in the lot, which was occupied by Carpenter and his codefendant Justin Williams, and arrested both men after ordering them to exit. *Id.* Using the key taken from Timms, officers opened the Volvo's trunk and found a tote bag containing over $80,000 in cash and the bank's GPS trackers, as well as clothes similar to those worn by the robbers as seen on the bank's surveillance video. *Id.*

This initial search, however, did not turn up the firearms used in the robbery. *Carpenter*, 803 F. App'x at 960. Officers searched the path between the bank and the apartment building, along with nearby areas, but were unable to locate the guns. *Id.* The Volvo was towed to the HPD police station, where officers conducted a more thorough search but still failed to find the missing firearms. *Id.* Finally, an FBI agent contacted John Hamilton, a Chicago Police Department ("CPD") Sergeant with experience locating hidden compartments in vehicles. Hamilton was able to locate two handguns hidden behind the Volvo's radio. *Id.*

Timms was also taken into custody; a criminal background check divulged that he had previously been convicted of bank robbery along with Carpenter. (Trial Tr. 349:3–17.) FBI Special Agent Michael Peetz ran a background check on Carpenter and determined that his criminal history photo matched the appearance of one of the robbers on the bank's surveillance video.

---

[2] While the court will cite to the transcript from Carpenter's criminal trial as a single continuous document, it is available on the criminal docket in four parts as follows: pages 1–128 [*251], pages 129–253 [*252], pages 254–379 [*253], pages 380–473 [*254].

(*Id.* 350:17–351:2.)  Carpenter's probation officer Anthony Morton received a notification about the check and contacted the FBI to inquire about it; he was shown an image from the video and stated that based on his familiarity with Carpenter's appearance, he was "over 90 percent sure" Carpenter was the robber.  (*Id.* 333:22–334:6, 335:4–6.)

## II.    Criminal Pretrial Proceedings

Carpenter and his codefendant Justin Williams were indicted on January 4, 2014 on three counts: bank robbery, in violation of 18 U.S.C. § 2113(a); brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  (Indictment [*14] at 1–3.)  Because Carpenter was unable to afford private counsel, the court appointed Cerise Fritsche of the Federal Defender Program to represent him.  (Order as to Malcolm Carpenter [*2].)

On October 30, 2014, Fritsche filed two pretrial motions on Carpenter's behalf.  The first was a motion to sever the felon-in-possession count under Federal Rules of Criminal Procedure 8 and 14.  The motion argued that admitting evidence of Carpenter's prior bank robbery conviction in support of the felon-in-possession count would unfairly prejudice the jury in ruling on the other two counts.  (Def.'s Mot. to Sever [*49] at 4.)  Counsel argued in the alternative for a bifurcated trial in which a single jury would first hear evidence and reach a verdict on the first two counts, and only then hear evidence on the felon-in-possession count.  (*Id.* at 5.)  The second motion asked the court to suppress evidence from the warrantless search of the Volvo at the HPD station as obtained in violation of the Fourth Amendment.  (Def.'s Mot. to Suppress [*50] at 1.)  It argued that this investigation exceeded the scope of a proper inventory search, since HPD's established inventory procedure for impounded vehicles did not extend to locating hidden compartments.  (*Id.* at 6.)  Fritsche did not file a supporting affidavit from Carpenter with either motion.

Judge Milton Shadur, the judge initially assigned to Carpenter's criminal case, entered and continued the motion to sever but ordered the government to respond to the motion to suppress [*51]. The government's November 17, 2014 response brief recounted the facts leading

up to the vehicle search "based on FBI reports, bank and building surveillance video, Homewood Police Department reports, and photographs of the seized evidence, all of which was produced in discovery," though none of this evidence was attached as an exhibit. (Gov.'s Opp. to Mot. to Suppress [*53] at 1 n.1.) The government alleged that Carpenter had told officers while being arrested that "[t]he only thing I did was trespass in that car." (*Id.* at 3.) Based on these allegations, the government made two arguments for denial of the motion: first, that Carpenter did not own the car and thus lacked rights to challenge the search under the Fourth Amendment, and second, that—although the HPD's report had referred to the station search as an "inventory search"—it in fact was supported by valid probable cause and fell under the automobile exception to the warrant requirement. (*Id.* at 6–11.) Pursuant to this exception, law enforcement may conduct a warrantless search of any area of a vehicle in which they have probable cause to believe that evidence of criminal activity may be found. *United States v. Charles*, 801 F.3d 855, 860 (7th Cir. 2015).

At a November 21, 2014 status hearing, Fritsche informed the court that she was leaving the Federal Defender Program and "requested a short deadline for the reply in anticipation of being able to file the brief prior to [her] departure from the office." (Unopposed Mot. to Extend Deadline [*57] at 2.) The court set a deadline of December 5, 2014 for this memorandum, as well as a supporting affidavit from Carpenter [*55]. One day before the deadline, however, Fritsche filed an unopposed request for an extension of time, stating that she had been unable to complete the briefing and would need to pass it on to substitute counsel. (Mot. to Extend at 2.) The court granted her request [*59].

Carpenter's new attorney, Piyush Chandra of the Federal Defender Program, entered an appearance on January 13, 2015 [*66], around the same time that the case was reassigned to the undersigned judge [*70]. After a status hearing on April 1, the court reset the deadline for Plaintiff's reply brief in support of the motion to suppress to May 1, and also ordered the government to submit a written response to the motion to sever [*77].

4

On April 20, the government filed its brief in opposition to the motion to sever. (Gov.'s Resp. to Mot. to Sever [*78].) The government argued that any risk of prejudice from trying the three counts together could be mitigated by a stipulation that Carpenter had been convicted of a prior felony without revealing the nature of this offense, as well as a limiting instruction to the jury not to consider the conviction for any purpose other than the felon-in-possession count. (*Id.* at 2–3.) Chandra, however, did not meet his initial deadline to file a reply brief. Instead, Chandra sought and received five extensions of time to file submissions in support of both motions [*80, *82, *84, *85, *87] over a period of three months. Finally, on July 30—six days after his most recent deadline had already lapsed—Chandra advised the court that he would not be filing a reply in support of either motion.

The court issued minute orders denying both motions the same day. It held with respect to the motion to suppress that, since "Defendant has admitted that he was a 'trespasser' in the car at the time of the arrest, and was not the driver, he has established neither a property nor possessory interest in the automobile nor in the property seized." (Minute Entry [*89]). With respect to the motion to sever, the court endorsed the government's proposal that the parties enter into a stipulation concerning Defendant's previous conviction and the jurors be given a limiting instruction to mitigate any prejudice from evidence of Defendant's past conviction (Minute Entry [*88]). As an alternative, the court also encouraged the parties "to consider" a bifurcated trial structure by "trying Counts I [bank robbery] and II [use of a firearm in connection with a crime of violence] without reference to Count III [unlawful possession of a firearm by a felon], and then proceeding to hear evidence on Count III only if Defendant is acquitted of Count II (with the understanding that, should he be convicted on Count II, Defendant would not contest Count III)." (*Id.*)

Eight months later, Carpenter filed a pro se motion to quash his arrest. (Mot. to Quash Arrest [*104].) In this motion, Carpenter asserted that Attorney Chandra had failed to confer with him about the decision not to file a reply, and had "deceive[d] [him] into believing" that the motion

to suppress was still pending.  (*Id.* at 3.)  Carpenter's pro se submission also specifically contested the government's argument that he had admitted to being a "trespasser" in the car, instead asserting that he had merely asked the agent who arrested him on December 4, 2013 whether he had "been arrested for trespassing" in general.  (*Id.* at 1.)  Chandra filed a motion to withdraw as Carpenter's counsel a few days later, citing an irreconcilable breakdown in the attorney-client relationship.  (Mot. to Withdraw [*106] at 1.)  The court granted Chandra's motion [*108] and directed that new counsel be appointed.

Carpenter fared no better with other counsel, however.  As the case proceeded towards trial, he fired two more Federal Defender Panel attorneys over the course of ten months [*114, *124, *145] and, in February 2017, filed a motion to represent himself pro se with standby counsel [*160].  He asserted in this motion that none of his prior attorneys had acted in "his best interest" and that "a new court appointed attorney from this division representing him would be equal to putting his head in a bag of poisonous snakes."  (Mot. to Proceed *in Propria Persona* [*160] at 1–2.)  With reluctance, and after warning him of the potential consequences (Tr. of Feb. 28, 2017 Hearing [*304] 2:8–8:1), the court allowed him to proceed to trial pro se, with standby counsel [*162].

## III.    Trial, Conviction, and Sentencing

Carpenter's trial took place over the course of three days in August 2017.  At the final pretrial conference, the government informed the court that Carpenter had declined to stipulate to his prior felony convictions.  (Tr. of Aug. 14, 2017 Pretrial Conf. [*307] 16:24–17:6.) Accordingly, the government stated that it planned to establish the requisite element of the felon-in-possession charge by introducing a redacted copy of Carpenter's prior conviction with all references to bank robbery removed.  (*Id.* 17:7–18:10.)  Carpenter did not object, nor did he raise the option of bifurcating the trial or renew his motion to sever.

At trial, the government presented testimony from multiple eyewitnesses at the bank, surveillance video from the day of the robbery, and records from the HPD's and FBI's

investigations. As Carpenter's motion to suppress had been denied, the government also presented evidence from the search conducted at the HPD station—including both of the guns recovered from the Volvo, as well as forensic evidence of Carpenter's fingerprints on one of them. (Trial Tr. 200:19–233:8, 243:10–250:17, 298:12–21.) The government did not, however, affirmatively discuss Carpenter's past conviction during its case-in-chief beyond establishing he had previously been convicted of an unnamed felony. (*Id.* 6:2–4, 155:9–159:11.)

Carpenter elected to present his own defense case, as well as to testify. During this case, Carpenter made a number of decisions that led to evidence about his prior felony conviction being introduced. In particular, Carpenter called both his prior probation officer Anthony Morton and FBI Special Agent Michael Peetz as witnesses, under the theory that Morton had acted improperly by identifying him to Peetz, even though this identification had not been a basis for law enforcement's original probable cause determination and had not been mentioned during the government's case-in-chief. (*Id.* 121:8–122:9, 331:18–332:6, 338:21–339:2.) Carpenter elicited testimony from Morton that he had been on supervised release at the time of his arrest, and from Peetz that he had previously been arrested for bank robbery along with Antwan Timms. (*Id.* 332:10–15, 340:3–341:22.) When the government argued at sidebar that Carpenter had now opened the door to evidence of his prior conviction, Carpenter did not object and instead stated that he was "going to bring it up anyway because it's unconstitutional." (*Id.* 348:2–14.) The government thus proceeded to elicit testimony from Peetz that Carpenter and Timms had previously been convicted of bank robbery, and that the FBI had positively identified Carpenter as one of the individuals in the surveillance video based on a photo from his prior arrest. (*Id.* 350:17–351:2.) Finally, Carpenter took the stand in his own defense and affirmatively informed the jury that he did, in fact, have a prior conviction for bank robbery, though he professed a belief the government could not constitutionally punish him on this basis. (*Id.* 392:15–18, 406:11–22.)

Carpenter did not object to the government's proposed limiting instruction on Count III, which was taken from the Seventh Circuit's pattern instructions and informed the jury as follows:

> You may consider evidence that the defendant was convicted of a crime only for the purpose of deciding the believability of his testimony and determining whether he had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, with respect to that Count Three. You may not consider it for any other purpose.

(*Id.* 423:1–6.)  The government echoed this instruction in its closing argument, reminding the jury that they should consider Carpenter's prior conviction only in evaluating whether it had met its burden on the felon-in-possession charge.  (*Id.* 441:22–442:3.)

On August 17, 2017, the jury convicted Carpenter on all three counts [*227].  The court later sentenced him to 30 years in prison followed by three years' supervised release [*285].  While Carpenter's bank robbery charge under Section 2113(a) carried a maximum 20-year sentence, his second conviction under Section 924(c) for use of a firearm during a felony carried an additional mandatory consecutive 25 years.  *See* 18 U.S.C. §§ 924(c)(1)(C)(i), 2113(a).

Carpenter appealed this judgment [*287], claiming both that Chandra's failure to file the reply briefs constituted ineffective assistance of counsel, and that the court's limiting instruction to the jury on Count III was inadequate and deprived him of the right to a fair trial.  On May 6, 2020, the Seventh Circuit rejected Carpenter's jury-instruction claim, holding that he had waived his right to appeal by failing to timely object and that the claim failed in any event under plain error review.  *Carpenter*, 803 F. App'x at 961–62. The Court of Appeals dismissed Carpenter's ineffective-assistance claim without prejudice, reminding him that such a claim is "best raised in collateral proceedings."  *Id.* at 961.

Carpenter timely filed this petition in December 2020 [1] (hereinafter "Pet.").  *See* 28 U.S.C. 2255(f)(1).  The petition, and the government's September 2021 response [8] (hereinafter "Resp."), are now before the court for decision.

## DISCUSSION

A habeas petitioner is entitled to relief under 28 U.S.C. § 2255 if "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . . ." 28 U.S.C. § 2255(b). "Relief under § 2255 is available only in

extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) (citation and internal quotation marks omitted). In making that determination, the court "reviews the evidence and draw all reasonable inferences from it in a light most favorable to the government." *Gibson v. United States*, 779 F. Supp. 2d 760, 764 (N.D. Ill. 2011) (citing *Carnine v. United States*, 974 F.2d 924, 928 (7th Cir. 1992)). The district court must grant the petitioner an evidentiary hearing unless "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief, or if the petitioner makes conclusory or speculative allegations rather than specific factual allegations." *Burkhart v. United States*, 27 F.4th 1289, 1299 (7th Cir.) (citations and internal quotation marks omitted), *cert denied*, 143 S. Ct. 309 (2022).

A petitioner seeking relief based on ineffective assistance of counsel must satisfy the Supreme Court's two-prong test from *Strickland v. Washington* by showing both that counsel's performance was deficient and that this deficiency prejudiced the outcome of the criminal case. 466 U.S. 668, 688 (1984). The performance prong asks whether the lawyer's representation fell below "an objective standard of reasonableness considering all the circumstances." *Bridges v. United States*, 991 F.3d 793, 803 (7th Cir. 2021) (citing *Hinton v. Alabama*, 571 U.S. 263, 272–73 (2014)). Lawyers have a duty to "make reasonable investigations" of law and fact, and when they do so, deference must be given to their strategic decisions. *Id.* "There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Swanson v. United States*, 692 F.3d 708, 714 (7th Cir. 2012) (internal quotation marks and citations omitted). As for *Strickland's* prejudice prong, Carpenter must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Shannon v. United States*, 39 F.4th 868, 877 (7th Cir. 2022) (quoting *Strickland*, 466 U.S. at 694). The burden of establishing both elements of *Strickland* falls on the

petitioner and the court need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*.

## I.     Per Se Ineffective Assistance

Carpenter first claims that his counsel's failure to file the reply briefs amounted to "client abandonment" and thus ineffective assistance of counsel per se. He cites *Castellanos v. United States*, which held that a criminal defendant need not show their chances of success on appeal under *Strickland*'s prejudice prong if they can prove their lawyer failed to carry out their instructions to file such an appeal. 26 F.3d 717, 718 (7th Cir. 1994); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000) (in such circumstances, prejudice should be presumed "with no further showing from the defendant of the merits of his underlying claims").

These cases do not support a finding of per se ineffective assistance here. *Castellanos* and *Roe* both involved a lawyer's failure to appeal their client's conviction, not a failure to file a reply brief in support of a motion to suppress. Courts never characterize the failure to file or pursue a particular defense motion as per se ineffective assistance; instead, when a defendant claims of ineffective assistance premised on counsel's failure to file a motion to suppress, the defendant must show that the motion would have been meritorious under *Strickland*. *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005). If failure to file such a motion at all is not per se ineffective assistance, the failure to file a reply brief is also not per se prejudice, as at least one other court in this district has stated. *See Hankton v. United States*, No. 01 CR 01, 2012 WL 3308419, at *7 (N.D. Ill. Aug. 8, 2012) (citing *United States v. Birtle*, 792 F.2d 846, 847–48 (9th Cir. 1986)). In *Hankton*, defendant's conviction had been affirmed, but the Seventh Circuit had remanded the case for a possible sentence reduction ("*Paladino* remand," *see United States v. Paladino*, 401 F.3d 471 (7th Cir 2005)). The district court declined to reduce Hankton's sentence, and the Seventh Circuit invited the parties to submit "any arguments concerning the appropriate disposition of the appeal in light of the district court's decision," but defendant's counsel missed both an initial deadline and an extended deadline to file this supplemental brief. *Hankton*, 2012

WL 3308419, at *2.  Though counsel's actions were "far from exemplary," the district court observed, her failure to file "does not come close to what is required to establish per se prejudice under *Strickland*."  *Id.* at *6.

So too here.  Unlike a notice of appeal or an opening brief, a reply is an opportunity to "clarify or reemphasize, in light of the [opposing] brief, the issues already raised and argued in [an] opening brief."  *Birtle*, 792 F.2d at 848.  If failure to file a motion at all does not warrant a presumption of prejudice, failure to file a reply brief also does not constitute being "deprived . . . of *any* assistance of counsel . . . ."  *Castellanos*, 26 F.3d at 718 (emphasis in original).[3] Carpenter's per se ineffective assistance claim thus fails: to succeed, he will need to show both that his counsel's failure to file the reply briefs was objectively unreasonable *and* that filing them might reasonably have changed the ultimate outcome at trial.  As explained here, Carpenter cannot meet that test, either.

## II.    Traditional Ineffective Assistance

### A.    Motion to Suppress

To prevail on his motion to suppress evidence from the search of the Volvo, Carpenter needed to prove that (1) he had a valid Fourth Amendment interest in the car that (2) was violated by the government's warrantless search.  *United States v. Figueroa-Espana*, 511 F.3d 696, 703– 04 (7th Cir. 2007).  A defendant has a valid Fourth Amendment interest if they held both a subjective expectation of privacy in the searched area and an objective one that society would consider legitimate and reasonable.  *Id.* at 704.  In its original opposition brief, the government argued (among other things) that Carpenter failed this test because he had allegedly admitted

---

[3]    Carpenter also cites *United States v. Nolan*, 956 F.3d 71 (2d Cir. 2020), which held that defense counsel's abandonment of a pretrial motion to exclude eyewitness testimony (in lieu of instead impeaching the eyewitnesses at trial) was ineffective assistance of counsel.  But the *Nolan* court did not apply a per se approach in reaching this conclusion: rather, it analyzed both prongs of the *Strickland* test and found it "abundantly clear" that counsel's decision was not only unreasonable but prejudiced the outcome at trial.  *Id.* at 79–83.  As set forth below, Carpenter has made no such showing of prejudice.

upon arrest to "trespassing" in the Volvo. After Carpenter failed to reply, the court denied his motion on the grounds that Carpenter lacked any property or possessory interest in the vehicle and thus could not assert a reasonable expectation of privacy in its contents. *See Rakas v. Illinois*, 439 U.S. 128, 148 (1979).

Carpenter argues that Chandra's failure to file a reply and affidavit was professionally unreasonable and precluded him from presenting additional facts that would have allowed him to rebut the government's argument. Specifically, he claims he would have disputed his alleged admission of "trespassing" in the car—which formed the basis for the court's ruling against him— and explained that he had only asked the officers whether he was being arrested for "trespassing" in the *parking lot*. He further claims that he would have provided facts sufficient to establish that he had a reasonable expectation of privacy in the car despite not owning it, including that

> (1) Carpenter . . . had [been] granted permission to use the Volvo; (2) Carpenter drove the Volvo regularly, and exclusively, for a period of several months; (3) Carpenter maintained the only key to the Volvo for several months; (4) because the Volvo only had one key, Carpenter, at times, gave the key to his family member, Antwan Timms, to enable Timms to run errands, and attend social activities; and (5) although Timms drove the Volvo on the day of Carpenter's arrest, Carpenter had an expectation of privacy in the Volvo.

(Pet. at 14.)[4] Chandra's failure to present these facts, Carpenter argues, doomed his motion by leading the court to adopt the government's version of events as uncontested—and thus prejudiced him by allowing the evidence from the search to come in at trial, resulting in his conviction and ultimate sentence enhancement on the weapons charges.

---

[4] The government objects on procedural grounds to Carpenter's presentation of these facts in his Section 2255 petition, arguing that he failed to file a signed affidavit in support of these allegations. Carpenter responded by attaching a verified copy of his petition to his reply that he signed under penalty of perjury. (*See* Ex. A to Reply in Support of Mot. [14-1].) This is sufficient to pass muster under *Kafo v. United States*, 467 F.3d 1063, 1071 (7th Cir. 2006) (vacating denial of post-conviction petition where denial was based on failure to submit an affidavit, as "had the petition been submitted under oath, the district court might well have considered the allegations sufficient to withstand . . . a motion to dismiss"; and ordering remand to "afford the petitioner an adequate opportunity to submit a verified version of the amended complaint or a supplemental affidavit.").

The reasons for Chandra's long delay in acting on the reply and affidavit are unclear.  The brief was already due when he filed an appearance as Carpenter's counsel in January 2015, and he had some six months to complete it (after accounting for the initial delay in scheduling a status hearing due to the turnover in judges, plus the court's subsequent extensions of time) before he ultimately informed the court he would not do so.  If counsel found Carpenter's account plausible, submitting even a short statement in support of that account would presumably have required little effort.  It could well be, as the government suggests, that counsel lacked confidence in the motion (which he had inherited from his predecessor, and which his own successors did not seek to renew), and took time behind the scenes to investigate its underlying merits before determining that further litigating it would be fruitless and potentially harmful to his client.  *See Cieslowski*, 410 F.3d at 361 (finding defense counsel's decision not to file clearly meritless motion to suppress reasonable given the "risk of an upward departure for obstruction of justice" upon sentencing).  In *Cieslowski*, however, the court had the benefit of hearing the defense counsel's explanation for her challenged actions directly via testimony.  Here, in contrast, the court has neither ordered a hearing nor requested a statement from Mr. Chandra.

In this case, however, the court need not decide whether Chandra's actions were professionally reasonable.  Carpenter's claim would fail in any event under *Strickland*'s prejudice prong.  "In order to demonstrate actual prejudice where the principal allegation of ineffectiveness is defense counsel's failure to competently litigate a Fourth Amendment claim, the defendant must prove that the Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence."  *United States v. Jackson*, 103 F.3d 561, 573 (7th Cir. 1996).  Here, it is clear from reviewing the record that Carpenter's motion to suppress would have been futile even if he had filed a reply and affidavit.

To start, it is not clear that the court's granting of the motion to suppress would have resulted in acquittal.  At trial, the government presented surveillance video from the December 2013 robbery showing two robbers brandishing firearms, as well as eyewitness testimony from

bank employees identifying Carpenter as one of the two individuals shown in this video and describing his use of a gun to threaten them. (Trial Tr. 18:13–19:25, 22:17–19, 36:20–25, 42:5–43:8, 48:13–24.) While a successful motion to suppress might have kept out at least some of the evidence recovered from the search of the Volvo at the HPD station—including the firearm with Carpenter's prints—the government had substantial additional evidence with which to convict Carpenter on the robbery and weapons charges.

Acknowledging, however, that *Strickland*'s prejudice standard requires only a "reasonable probability" of a different outcome had the evidence been excluded, the court will assume that Carpenter's success on the motion would at least have made the government's task at trial more difficult. *Jackson*, 103 F.3d at 573. But this still leaves the question of whether Carpenter—even after presenting additional facts—could feasibly have prevailed on a motion to suppress evidence from the search of a car that he continues to assert did not belong to him. A defendant cannot assert a meritorious Fourth Amendment claim over a car in which he has no reasonable expectation of privacy. *Cf. Figueroa-Espana*, 511 F.3d at 704. Carpenter is correct that he need not necessarily have been the vehicle's owner to assert such an expectation. *Id.*; *see Johnson v. United States*, 604 F.3d 1016, 1020 (7th Cir. 2010) (collecting cases). But the issues with his Fourth Amendment claim go far beyond whether or not he in fact admitted to "trespassing," even if the court based its original ruling on this purported admission. Notably, the government also presented facts in its initial opposition that Carpenter did not have the key to the car in his possession when he was arrested. (Gov.'s Opp. to Mot. to Suppress [*53] at 3.) And though Carpenter now claims he had temporarily lent the key to Timms on the day of the robbery (Pet. at 14), the government later also elicited testimony at trial that Carpenter had exited the car from the front passenger seat of the parked car at the time of the arrest, and that his codefendant Williams had exited from the rear seat (Trial Tr. 149:17–20).[5] Generally, "mere passenger[s]" in a car lack

---

[5]    Carpenter takes issue with the government's inclusion of several facts in its opposition to his habeas petition that were not presented in its original 2017 opposition, but were

a reasonable expectation of privacy in its contents. *United States v. Smith*, 697 F.3d 625, 630 (7th Cir. 2012)); *see Rakas*, 439 U.S. at 148–49; *United States v. Price*, 54 F.3d 342, 345–46 (7th Cir. 1995). Nothing about these circumstances demonstrates that Carpenter had control over the vehicle. So even if Carpenter had filed a reply and affidavit with the facts he now asserts, it is far from certain that these facts would have helped resuscitate his claim to Fourth Amendment standing.

If Carpenter's Fourth Amendment interest in the Volvo were the only issue standing between him and a successful suppression motion, the court might allow the matter to proceed to an evidentiary hearing in order to resolve some of these factual ambiguities. *See Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001). But such a hearing is unnecessary here in light of the final and most significant problem with Carpenter's claim of prejudice from counsel's failure to file the reply brief. Even assuming *arguendo* that Carpenter could have prevailed in establishing a Fourth Amendment interest in the car, the search would still be clearly justified under the automobile exception to the warrant requirement.[6]

"[T]he automobile exception permits the police to search a vehicle if there is probable cause to believe it contains evidence of criminal activity." *Charles*, 801 F.3d at 860. The scope

---

instead based on subsequent evidence from trial. This includes the testimony of CPD Sargeant Hamilton, who stated that he located the guns in a hidden compartment behind the Volvo's radio after seeing "what appeared to be a gun handle" protruding from an opening in the underside of the dashboard. (Reply in Support of Mot. [14] at 9; *see* Trial Tr. 246:11–17.) The court, however, sees no impropriety in assessing the likelihood of Carpenter's success on the suppression motion based on both the facts presented in the original briefing and those that were ultimately elicited at trial, even if the latter postdated the court's ruling on the motion. Had Carpenter filed a reply brief withdrawing his "trespasser" position, the government would have had the opportunity to present this (or other similar) testimony in its favor at a hearing.

[6] Carpenter argued in his original motion to suppress that this search exceeded the scope of a proper "inventory search" since HPD's "standard procedure[s]" for conducting inventory searches of impounded vehicles did not extend to hidden compartments. *United States v. Cherry*, 436 F.3d 769, 773 (7th Cir. 2006). The government does not contest this point, but it does not appear to be relevant; HDP's "standard procedures" do not define the Fourth Amendment standard where, as here, probable cause existed to search the vehicle under the automobile exception.

of the search extends to any areas in the vehicle where the contraband or instrumentalities of the crime might be found, including any hidden compartments or containers. *Id.* "Probable cause to search a vehicle exists if, given the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Hays*, 90 F.4th 904, 908 (7th Cir. 2024) (citation and internal quotation marks omitted). This requires a "common-sense judgment" in which "[o]fficers may draw reasonable inferences based on their training and experience" to determine whether to move forward with the search. *United States v. Richards*, 719 F.3d 746, 754 (7th Cir. 2013) (citation and internal quotation marks omitted).

Here, the government presented substantial evidence—both in its initial opposition, and later at trial—that law enforcement had probable cause to believe the guns were hidden in the Volvo. The HPD officers knew from speaking with bank employees that two armed robbers had fled towards a nearby apartment building, and FBI agents tracked the signal from the bank's hidden GPS transmitters to the trunk of the Volvo parked in that building's parking lot. (Gov.'s Opp. to Mot. to Suppress at 9.) An initial search of the car turned up multiple other pieces of evidence, including a bag of cash and clothes similar to those worn by the robbers on the surveillance video. (*Id.* at 10.) The officers and agents were unable to locate the two guns used in the robbery after searching the car's trunk and passenger compartment as well as the area around the bank and the apartment building (*id.*), circumstances that gave them ample probable cause to search the car for the missing weapons.

It does not matter, as Carpenter argues in his reply in support of his petition, that the guns were only discovered in a subsequent search at the police station. The automobile exception "does not vanish once the car has been immobilized" and applies "even after it has been impounded and is in police custody." *Michigan v. Thomas*, 458 U.S. 259, 261 (1982) (per curiam) (citing *Chambers v. Maroney*, 399 U.S. 42 (1970)); *see also United States v. Pace*, 898 F.2d 1218, 1244 (7th Cir. 1990) ("[T]he automobile exception does not require an immediate search; the police may lawfully seize the car, and then search it later.") (citing cases). *Chambers*, in

particular, involved facts highly similar to this case: police responding to reports of an armed robbery at a service station arrested four men in a station wagon wearing clothes similar to the ones described by eyewitnesses. 399 U.S. at 44. The station wagon was driven to the police station, where "[i]n the course of a thorough search of the car at the station, the police found concealed in a compartment under the dashboard two .38-caliber revolvers" as well as other evidence of the robbery. *Id.* The Supreme Court held that "[t]he probable-cause factor still obtained at the station house" and the search was therefore justified. *Id.* at 52.

Nor does it matter that officers unsuccessfully searched the car for guns twice—first in the parking lot, and again at the station—before calling in CPD Sargeant Hamilton. *See Florida v. Meyers*, 466 U.S. 380, 380–82 (1984) (per curiam) (upholding second search of impounded car conducted roughly eight hours after an initial search at the time of arrest). Probable cause does not always support multiple successive searches, but the additional search was not improper here. The officers knew from speaking with eyewitnesses and reviewing surveillance video that the robbers had been armed, found other highly incriminating evidence in the Volvo linking it to the robbery, and failed to find the guns elsewhere after searching the surrounding area. (*See, e.g.*, Trial Tr. 245:22–24.) It was reasonable for them to believe that the guns were concealed elsewhere in the car, and to continue to search it even after their preliminary searches turned nothing up.[7] *See United States v. Barragan*, 88 F. App'x 107, 112 (7th Cir. 2004) ("[T]he fact that a superficial search did not turn up anything does not negate the other evidence . . . which was more than sufficient to create a fair probability that contraband would be found in the van.")

---

[7]      Though the government has not explicitly argued the closely related "inevitable discovery" doctrine, that doctrine is also clearly relevant here, where the "the information ultimately or inevitably would have been discovered by lawful means." *United States v. Haldorson*, 941 F.3d 284, 293 (7th Cir. 2019) (citing *Nix v. Williams*, 467 U.S. 431, 444 (1984); *see United States v. Buchanan*, 910 F.2d 1571, 1573 (7th Cir. 1990) (denying motion to suppress evidence from warrantless search of defendant's hotel room under inevitable-discovery doctrine where defendant "was arrested for murder . . . the murder weapon had not yet been found . . . [and] it would have been foolish not to want to look for the gun there").

Carpenter has failed to demonstrate that he had a sufficiently meritorious Fourth Amendment claim such that that the court might have ruled differently on the parties' briefs had he submitted a reply and affidavit rebutting the government's assertion that he had admitted to trespassing in the Volvo. *Jackson*, 103 F.3d at 573. The court concludes that Carpenter is not entitled to relief—or to an evidentiary hearing—based on his ineffective-assistance claim arising from his motion to suppress.

**B.    Motion to Sever**

Next, Carpenter claims that he was deprived of effective assistance of counsel by Chandra's failure to file a reply in support of his motion to sever his felon-in-possession count from his other two counts, as well as by his subsequent counsel's failure to pursue the alternative option of bifurcating these claims at trial. He argues that this failure prejudiced him by allowing the jury to impermissibly consider evidence of his prior felony in deciding whether to convict him on the non-possession charges, despite the court's limiting instruction to the contrary.

A motion to sever challenges the joinder of counts under Federal Rules of Criminal Procedure 8 and 14. Rule 8 provides that charges may be combined in a single indictment if they are "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." FED. R. CRIM. P. 8(a). But even when joinder is proper under Rule 8, severance may still be warranted under Rule 14 if trying the counts together would "appear[] to unduly prejudice a defendant or the government . . . " FED. R. CRIM. P. 14(a). To succeed on his ineffective-assistance claim arising from the motion to sever, Carpenter must show a "reasonable probability" under *Strickland* both that he would have prevailed on the motion had the reply brief been filed, and that "the severance would have made a difference to the outcome of the trial." *Hernandez v. Cowan*, 200 F.3d 995, 999 (7th Cir. 2000).

Carpenter faces an uphill battle from the outset. There is a strong presumption in favor of trying related counts together based on considerations of judicial efficiency, convenience, and continuity. *See United States v. Carter*, 695 F.3d 690, 700 (7th Cir. 2012). Carpenter does not

dispute that the felon-in-possession charge, involving the same weapon used in the armed robbery, was factually related under Rule 8—he only argues that joinder was unduly prejudicial under Rule 14.  The burden for showing such prejudice is high, requiring "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *Zafiro v. United States*, 506 U.S. 534, 539 (1993).  Carpenter argues that district courts "routinely" grant motions to sever counts under Rule 14 (Pet. at 12), but this misrepresents both the applicable standard and its effect on the relative frequency of successful severance motions.[8]  While it is true that "trying multiple charges at the same time can sometimes . . . run[] the risk of producing a verdict based on bad acts and propensity evidence rather than on admissible evidence . . . severance is not always the best solution to that problem."  *United States v. Berg*, 714 F.3d 490, 496 (7th Cir. 2013).  Rather, "less drastic measures," such as limiting instructions or stipulations, "often will suffice to cure any risk of prejudice."  *Zafiro*, 506 U.S. at 539; *see Morens v. Meisner*, 702 F. App'x 446, 450 (7th Cir. 2017).

Carpenter presents no clear case for how a reply brief would have persuaded the court to depart from these principles in granting his motion to sever.  While he argues that counsel's failure to file the reply brief prevented him from "present[ing] additional arguments" in support of

---

[8]      Carpenter cites three cases in which courts ruled in favor of severance: *United States v. Bruce*, 109 F.3d 323 (7th Cir. 1997), *United States v. Chaney*, 165 F.3d 33 (7th Cir. 1998) (unpublished), and *United States v. Holloway*, 1 F.3d 307 (5th Cir. 1993).  These three cases hardly establish that district courts "routinely" grant motions to sever.  Neither *Bruce* nor *Holloway* is clearly analogous to Carpenter's case since neither of those cases discussed severance in depth as an issue presented on appeal; the appellate courts in those cases simply mentioned the fact that the lower courts had granted severance in reciting the procedural history, without elaborating further.  *Bruce*, 109 F.3d at 326; *Chaney*, 165 F.3d 33.  *Holloway* reversed a denial of a motion to sever on direct appeal, but its facts are clearly distinguishable.  That case also involved a motion to sever a felon-in-possession charge from bank robbery charges, but the gun at issue had been discovered almost two months after the robbery for which the defendant was tried and there was no indication it had been used during that robbery; the Court of Appeals found these counts insufficiently factually related to pass muster under Rule 8, let alone Rule 14.  *Holloway*, 1 F.3d at 310–11.  In Carpenter's case, the gun was discovered immediately following his arrest in the same vehicle that contained substantial other evidence of the robbery.

severance, he does not specify what these arguments would have been or how they would have effectively rebutted the government's position. (Pet. at 12.) As the court found in its order denying the severance motion, admission of Carpenter's felony record would undoubtedly be prejudicial, but any prejudice could be adequately mitigated—either through a stipulation, or by bifurcating the evidence to try the first two counts before turning to the felon-in-possession count.[9]

True, neither of these prophylactic measures was ultimately taken at Carpenter's trial. But that cannot be separated from the fact that Carpenter dismissed not only Chandra, but two other successive Federal Defenders appointed to represent him, and moved the court to represent himself pro se over six months before the start of trial. *Cf. United States v. Traeger*, 289 F.3d 461, 475 (7th Cir. 2002) (noting, in rejecting appeal of defendant convicted of bank robbery who "went through three lawyers, firing them for questionable reasons," that "a defendant may waive the right to counsel through his own contumacious conduct") (citation and internal quotation marks omitted). Consistent with the court's order, the government offered to stipulate as to Carpenter's prior felony without revealing its nature. This is standard practice for felon-in-possession charges and would have helped "minimize the risk of unfair prejudice . . . [by] preventing the jury from hearing any details of his prior conviction." *Morens*, 702 F. App'x at 450; *see Old Chief v. United States*, 519 U.S. 172, 191–92 (1997). Carpenter refused this option, and he does not explain now why such a stipulation would have been insufficient. Rather, at trial, he voluntarily chose— over the court's repeated warnings—to introduce evidence of his prior conviction during his defense case.

Finally, Carpenter has not shown why severance would have changed the outcome at trial in light of the court's limiting instruction. In general, "juries are presumed to follow their instructions." *Zafiro*, 506 U.S. at 540 (citation omitted). Indeed, the Seventh Circuit has already

---

[9]     While Carpenter describes the court's order as "instruct[ing]" the parties to pursue bifurcation (see Reply in Support of Mot. at 11), the court never framed this as mandatory. (*See* Minute Order [*88] ("[T]he court *invites the parties to consider* trying Counts I and II without reference to Count III . . . .") (emphasis added).)

ruled in Carpenter's own case that this court's limiting instruction "correctly informed the jury that it should not consider Carpenter's conviction in a prejudicial fashion," and that the way in which it did so was not plainly erroneous. *Carpenter*, 803 F. App'x at 962. And in any event, there was "overwhelming" evidence introduced at trial—including bank surveillance video, fingerprint records, and an eyewitness's in-court identification of Carpenter as the robber—for the jury to reach the conclusion it did without drawing any conclusions one way or the other on his "propensity for armed robbery." *Carter*, 695 F.3d at 701; *see Berg*, 714 F.3d at 496 (finding no plain error in decision to try multiple charges together where "the evidence against [defendant] was compelling on all counts" and the jury received a limiting instruction). Carpenter has thus failed to show that his counsel's failure to pursue the motion to sever prejudiced his case.

## CONCLUSION

Carpenter's petition under 28 U.S.C. § 2255 [1] is denied. The court finds that reasonable jurists could not conclude he has made a "substantial showing of the denial of a constitutional right," and therefore declines to issue a certificate of appealability. 28 U.S.C. § 2253(c)(2). The Clerk is directed to enter judgment in favor of the United States.

ENTER:

Dated: May 7, 2024

REBECCA R. PALLMEYER
United States District Judge